# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 1:12CR00035 |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| RICKY DAVID ROBINSON, ET AL., | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendants. | ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; David S. Saliba, Saliba & Company PC, Wytheville, Virginia, for Defendant Ricky David Robinson and Brian J. Beck, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant Cynthia Lee Robinson*

In this criminal case, I consider the defendants' post-trial Joint Motion for Judgment of Acquittal or New Trial.

I

The defendants, Ricky David Robinson and Cynthia Lee Robinson, husband and wife, were jointly charged in an Indictment with harboring a fugitive (Count One) and conspiracy to harbor a fugitive (Count Two). They were tried by a jury and found guilty on both counts.

The defendants have filed a timely Joint Motion for Judgment of Acquittal or New Trial pursuant to Federal Rules of Criminal Procedure 29 and 33. They

first contend that the evidence presented at their trial was insufficient to convict them of either charge. Second, they submit that they are entitled to a new trial, arguing that two items of evidence were improperly admitted at their trial. The government opposes this motion, which has been fully briefed and is ripe for decision.

After careful consideration of the record and the arguments made by counsel, I will deny the motion.

II

The defendants argue that the government failed to carry its burden of proving their guilt. The government maintains the guilty verdicts are supported by sufficient evidence of each element of the charged crimes.

In considering the evidence, I must keep in mind that "it is '[t]he jury, not the reviewing court, [which] weighs the credibility of the evidence . . . and if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe.'" *United States v. Castillo-Pena*, 674 F.3d 318, 321 (4th Cir. 2012) (quoting *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996)). In this process, I view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the government. *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003) (citing *Glasser v. United States*, 315 U.S. 60, 80

(1942)). The question is whether the convictions are supported by substantial evidence, which is defined as "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Young*, 609 F.3d 348, 355 (4th Cir. 2010) (internal quotation marks and citation omitted).

Count One of the Indictment charged the defendants with harboring a fugitive, namely, their son Chad Robinson, in violation of 18 U.S.C.A. § 1071 (West Supp. 2012). To prove a violation of this statute, the government is required to demonstrate that "(1) a federal warrant has been issued for the fugitive's arrest, (2) the harborer had knowledge that a warrant had been issued for the fugitive's arrest, (3) the defendant actually harbored or concealed the fugitive, and (4) the defendant intended to prevent the fugitive's discovery or arrest." *United States v. Mitchell*, 177 F.3d 236, 238 (4th Cir. 1999) (citing *United States v. Silva*, 745 F. 2d 840, 848 (4th Cir. 1984)). The actual harboring or concealment element requires "some affirmative, physical action by the defendant[s]." *Mitchell*, 177 F.3d at 239 (internal quotation marks and citation omitted). "Generally, the Government must prove a physical act of providing assistance, including food, shelter, and other assistance to aid the [fugitive] in avoiding detection and apprehension." *Id.* (internal quotation marks and citations omitted).

-3-

Count Two of the Indictment charged the defendants with conspiracy to harbor a fugitive in violation of 18 U.S.C.A. § 371 (West 2000). In order to sustain a conspiracy conviction under this provision, the government must prove: "(1) an agreement between two or more people to commit a crime, and (2) an overt act in furtherance of the conspiracy." *United States v. Ellis*, 121 F.3d 908, 922 (4th Cir. 1997).

The evidence as it was presented at trial showed that a federal arrest warrant for Chad Robinson had issued on February 17, 2012. Law enforcement first contacted the defendants in search of their son at their home on April 24, 2012. Officers believed they spotted Chad running from the property but lost sight of him. After unsuccessfully searching the home, the officers informed both defendants that a warrant had been issued for their son's arrest and that they could face criminal charges if they chose to harbor him.

Officers visited the Robinson residence again on May 9, 2012. They found no cars at the house, but a "four wheeler" was parked outside. As the officers approached the home on foot, they saw Chad peering around the side, but again lost sight before they were able to give chase. Officers entered the home and found another individual, Cody Quesenberry, who denied knowledge of Chad's whereabouts. The officers noted that there were two glasses with cold drinks and two packs of different brands of cigarettes around the pool table in the basement of

the Robinsons' home. Officers searching the home encountered a bedroom — other than the master bedroom — in which the bed was unmade, clothes were strewn about, an electric fan was running, and an open bag of camping gear was lying on the floor. Finally, officers discovered a fresh set of bare footprints in the mud outside of the house. One of the officers then phoned Ricky Robinson and asked him to return home to discuss the situation. Ricky asked for additional time to speak with his son to encourage him to turn himself in.

Officers again visited the defendants' home early in the morning of May 15, 2012. Cynthia Robinson allowed the officers to search the house, but denied having recently seen her son. She stated to them that he had called her from an unknown telephone number the preceding Sunday but claimed that the number was no longer stored in her phone. She became agitated, started yelling and made hostile comments about police officers. Cynthia ultimately admitted to one of the officers that Chad had eaten and slept at their home the previous Sunday evening. She told one of the agents, "He's not a fugitive, he lives here."

Ricky, speaking separately with officers outside the home, admitted that his son had been home "three or four" times since he started running from the police. Ricky stated that his son had last been home the preceding Friday and that he had given him ten dollars. Ricky also admitted to having driven Chad to his grandmother's home because their house was "hot." When confronted with his

wife's admission, Ricky finally stated that his son had spent all of the previous Sunday at his home, leaving Monday morning. Ricky further claimed he had fought with his son about turning himself in. At that point, Cynthia yelled to her husband that he did not have to speak to law enforcement and that he should come inside.

It does not appear that law enforcement officers had any additional interaction with the defendants until Chad's arrest on July 5, 2012, in the apartment of his girlfriend about ten miles from the Robinsons' residence. Chad phoned his parents several times from jail and recordings of portions of those conversations were introduced during the trial.[1] Cynthia was recorded telling Chad that Cody Quesenberry had been subpoenaed "to testify about the day y'all were here." She was also recorded asking, "Reckon they know we went up to Grandma's that night?" Ricky was recorded telling his son that "[b]ecause we done what we wasn't . . . supposed to do . . . we know we was gonna get caught doing that . . . and we have now, and they're trying to get us."

Ricky and Cynthia Robinson were arrested on the charges in this case on July 10, 2012. As she was being taken into custody, Cynthia told one of the

---

[1] The quotations below from the recorded calls were taken from transcripts created by the government that were supplied to the jury for their convenience in listening to the recordings during the trial. The recordings, but not these transcripts, were admitted into evidence.

officers that "rules were meant to be broken." The following day, Ricky was again recorded speaking with his son, telling him, "I told you this could, what was going to happen and you didn't believe me … Because you done that, you got us all caught now."

The defendants argue that the government presented insufficient evidence to demonstrate that they harbored and concealed their son. They claim that the assistance they provided to him did not constitute harboring. Emphasizing that they freely allowed officers to search their home each time they came to the residence, the defendants further claim that the government has not shown that they took any actions to frustrate the efforts of law enforcement by concealing their son.

The defendants premise their arguments on the Seventh Circuit's decision in *United States v. Costello*, 666 F.3d 1040 (7th Cir. 2012). That court concluded that a defendant who had allowed her boyfriend, whom she knew to be in the country illegally, to live with her but provided no other effort to assist or conceal him, was not guilty of harboring an alien under 8 U.S.C.A § 1324(a)(1)(A)(iii) (West 2005). The court concluded that the harboring element of § 1324, which prohibits concealing, harboring or shielding an illegal immigrant, requires that the government demonstrate something more than "simple sheltering" in order to incur criminal liability. It found that the government had not shown that the defendant's

Case 1:12-cr-00035-JPJ-PMS   Document 68   Filed 12/13/12   Page 7 of 20   Pageid#: 516

actions were critical in aiding the defendant to avoid detection and no evidence suggested the defendant had the purpose of encouraging, protecting or secreting illegal aliens.

The defendants in this case argue that the government failed to prove the intent to conceal or secrete a fugitive, but the evidence presented at trial refutes that contention. First, both defendants made false statements to law enforcement about the frequency with which they had seen their son and the number of times he had returned home. Although making false statements to law enforcement is not in itself harboring, these statements reflect the defendants' intent with regard to their treatment of their son and the nature of the assistance they gave him. Second, the recordings of the conversations between Chad and each of his parents contain significant admissions of their involvement in assisting him from being taken into custody. Finally, Ricky admitted to transporting Chad to his grandmother's because their home was "hot." A reasonable juror could have interpreted this evidence to reflect the intent to conceal. The government offered no similar evidence in its prosecution in the *Costello* case.

Moreover, a number of courts have found the evidence to have been sufficient in cases presenting similar circumstances to the facts in this case. *See United States v. Miles*, 10 F. App'x 113, 114-15 (4th Cir. 2001) (unpublished) (finding sufficient evidence where defendant lied to law enforcement, vehicles

associated with the fugitive had been observed for several days in the parking lot of the defendant's apartment, and fugitive was found in defendant's residence); *United States v. Howard*, 430 F. App'x 569, 571 (9th Cir. 2011) (unpublished) (finding sufficient evidence where the defendant provided a fugitive with food, shelter, a shower and a ride); *United States v. Udey*, 748 F.2d 1231, 1236 (8th Cir. 1984) (finding sufficient evidence of harboring where the defendant instructed his daughter to remain silent about the fugitive's presence and identity and allowed the fugitive to stay in his home).

The government has provided substantial evidence from which a reasonable juror could find the defendants guilty. Both defendants admitted to the physical acts of providing shelter and food to the fugitive. Moreover, both made misrepresentations to law enforcement and Ricky admitted to having driven Chad away from their home because it was "hot." From this evidence, the jury could reasonably find that the defendants harbored the fugitive with the intent to conceal. For these reasons, I will deny the defendants' motion for a judgment of acquittal.

III

The defendants make two arguments in support of their motion for a new trial, both of which they earlier presented in pretrial motions in limine. They first argue that the admission of the nature of the charge underlying the arrest warrant

-9-

Case 1:12-cr-00035-JPJ-PMS   Document 68   Filed 12/13/12   Page 9 of 20   Pageid#: 518

for Chad Robinson, distribution of 500 grams or more of methamphetamine, violated Federal Rules of Evidence 401[2] and 403.[3] The defendants acknowledge that the government was required to prove the existence of a warrant for the arrest of the person they are accused of harboring. They submit, however, that they should have been allowed to stipulate to the fact of the warrant, thereby avoiding admission of the nature of the underlying charge against their son during their trial.

To support their argument, the defendants point to the Supreme Court's decision in *Old Chief v. United States*, 519 U.S. 172, 191 (1997). In *Old Chief*, the Court decided that a defendant, who was willing to stipulate to the fact that he was a felon, was unfairly prejudiced by the admission of the nature of his prior felony conviction during a subsequent trial for being a felon in possession of a firearm. *Id.* The Court noted that because the government was only required to prove the fact of the underlying conviction, "there [was] no cognizable difference between the evidentiary significance of an admission and of the legitimately probative component of the official record the prosecution would prefer to place in evidence." *Id.* The record of prosecution would only introduce additional,

---

[2] Federal Rule of Evidence 401 defines "relevant evidence" to be evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" or "is of consequence in determining the action."

[3] Federal Rule of Evidence 403 permits the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

-10-

irrelevant information regarding the charge of which the defendant had been convicted. Given that the probative values of the two forms of evidence were the same, the Court concluded that the inherent risks of revealing the nature of the prior charge, including the danger of unfair prejudice and confusing the jury, warranted its exclusion from evidence. *Id.*

The defendants argue the same dangers were present in their case. They contend the nature of the arrest warrant had no probative value and unfairly prejudiced them because juries view narcotics crimes negatively and jurors might unfairly associate the Robinsons with their son's criminal behavior.

This case, however, is distinguishable from *Old Chief* in a number of respects. First, in *Old Chief*, the Court was especially concerned about the prejudicial nature of the information because the conviction that the government was seeking to introduce was the defendant's and therefore implicated Federal Rule of Evidence 404(b).[4] *Id.* at 181-182. The criminal conduct at issue in the present case is that of a third party and therefore does not raise the same concerns about the introduction of improper and unfair character evidence against these defendants.

---

[4] Federal Rule of Evidence 404(b)(1) prohibits using evidence of an individual's prior crime, wrong or other act "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

-11-

Moreover, the nature of the warrant in the present case has probative value beyond the mere fact of the warrant's existence. The government must not only demonstrate that the warrant existed but also that the defendants knew about it and attempted to harbor and conceal their son from it. The nature and severity of the underlying charges is probative of their intent and motive in their behavior towards their son. The defendants argue that the nature of the warrant cannot be relevant to their intent because the deputy United States marshals who visited their home repeatedly in search of their son declined to inform them of the charge contained in the warrant. That the deputy marshals did not inform them of the charges, however, does not mean the defendants were not familiar with the conduct for which their son was wanted. Such an argument would assist a fact-finder in evaluating the evidence presented and determining whether there was a reasonable doubt, but it would not affect the admissibility of the evidence.

The evidence in this case, therefore, has additional probative value that was absent in *Old Chief*, as well as less prejudicial effect. As the Supreme Court has noted, "[A] criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." *Old Chief*, 519 U.S. at 186-87. The evidence regarding the warrant for Chad Robinson's arrest on charges of distribution of methamphetamine was properly admitted during trial and the defendants are not entitled to a new trial on this issue.

IV

Finally, in support of their motion for a new trial, the defendants argue that a statement made by Ricky Robinson to law enforcement was improperly admitted into evidence in violation of Cynthia Robinson's rights under the Confrontation Clause of the Sixth Amendment and the Supreme Court's decision in *Bruton v. United States*, 391 U.S. 123 (1968). In *Bruton*, the Court concluded that the Confrontation Clause prohibits the introduction at a joint trial of an out of court confession by a non-testifying defendant against his co-defendant if the confession also incriminates the codefendant. *Id.* at 126. The Fourth Circuit has expounded on this ruling, holding that "[a] *Bruton* problem exists only to the extent that the codefendant's statement in question, on its face, implicates the defendant." *United States v. Locklear*, 24 F.3d 641, 646 (4th Cir. 1994). The Fourth Circuit further concluded that an out of court statement of a defendant may be redacted "'to remove *incriminatory* references pertaining to other defendants.'" *Id.* (quoting *United States v. Crockett,* 813 F.2d 1310, 1314 (4th Cir. 1987)). Moreover, "statements that, when redacted, do not even refer to the existence of the [co]defendant are admissible and do not require severance." *United States v. Akinkoye*, 185 F.3d 192, 198 (4th Cir. 1999). Finally, "[i]f a proffered statement of one non-testifying co-defendant becomes incriminating against another by virtue of an inference from other evidence at trial, the Confrontation Clause may not be

offended if those statements are redacted and a proper limiting jury instruction is given." *United States v. Lighty*, 616 F.3d 321, 376 (4th Cir. 2010).

Prior to their trial, the defendants filed a motion in limine seeking to exclude Ricky Robinson's statement to law enforcement officers that "several times [my] son has returned to [our] house with only my wife being present." The court approved the government's offer to redact the statement to read "several times my son has returned home." The defendants now contend that the admission of this redacted statement was improper. First, they argue that the statement remains incriminatory to Cynthia Robinson, and therefore violates her Sixth Amendment confrontation right, notwithstanding the redaction of any mention of Cynthia from the statement. The defendants contend that the statement is facially incriminating because it is probative of the overt act requirement of the charged conspiracy.

This argument has no merit. The defendants attempt to characterize this case as unusual because it raises a confrontation question in the context of a trial of two defendants on a charge of conspiracy. Rather than being unusual, however, this is the context in which *Bruton* questions often occur. *See, e.g., Lighty*, 616 F.3d at 377 (admitting the confession of a co-defendant in the context of a charge for conspiracy to kidnap); *Akinkoye*, 185 F.3d at 198 (admitting out of court confessions of two co-defendants in context of conspiracy charge); *United States v. Halteh*, 224 F. App'x 210, 218-19 (4th Cir. 2007) (unpublished) (admitting

statement of non-testifying co-defendant in context of conspiracy to commit robbery).

In order to prove a conspiracy, the government need only show that any one of the co-conspirators took an overt act with the purpose of furthering the conspiracy. *United States v. Cardwell*, 433 F.3d 378, 391 (4th Cir. 2005). In the context of a trial of multiple defendants for conspiracy, almost any statement in which a defendant incriminates himself would tend to establish the overt act element of the conspiracy. If statements of codefendants that are probative of the overt act element of a conspiracy were facially incriminating such that they would require confrontation and cross-examination under *Bruton*, then no self-incriminating statement of any codefendant could ever be admitted in the context of a joint trial for conspiracy. This cannot be the result intended by the Supreme Court in *Bruton* and its progeny. Moreover, the facially incriminating nature of this statement has been redacted in a manner consistent with *Locklear* and *Akinkoye*. The statement no longer mentions even the existence of a codefendant and any incriminating information may only be derived by "virtue of an inference" drawn from other evidence introduced at trial. *See Lighty*, 616 F. 3d at 376.

The defendants next argue that the government is attempting to read too broadly the Fourth Circuit's holding in *Akinkoye* that statements that "do not even refer to the existence of the [co]defendant are admissible," 185 F.3d at 198, given

-15-

the Supreme Court's decisions in *Crawford v. Washington*, 541 U.S. 36 (2004) and *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009). In these cases, the Court held that the availability of cross-examination, rather than general indicia of reliability, is the key to determining whether out of court statements of others are admissible against a defendant.

Although the Supreme Court has adjusted its standards for admitting incriminating hearsay statements for purposes of the Confrontation Clause, those standards do not apply directly to the circumstances presented in this case. In neither *Crawford* nor *Melendez-Diaz* did the Court address an out-of-court statement made by a codefendant who was also being tried in the same proceeding. The Fourth Circuit has noted that "defendants charged with participation in the same conspiracy are [generally] to be tried jointly." *Akinkoye*, 185 F. 3d at 197. In order to facilitate these joint trials, courts have allowed redacted statements, clearly admissible against one of the defendants, to be introduced during a trial of codefendants so long as the redacted version does not include blanks or obvious deletions that clearly implicate the codefendant. *See Gray v. Maryland.*, 523 U.S. 185, 196-97 (1998). The purpose of the redaction is to ensure that an admission made by one codefendant may be included in evidence without incriminating the other defendant. In *Crawford* and *Melendez-Diaz*, the Court was concerned with the reliability of incriminating hearsay testimony actually introduced against a

defendant. The redactions made in this case eliminated the facially incriminating nature of the statement with regard to Cynthia Robinson and therefore do not raise concerns under these cases.

The defendants' third argument is that the structure of the statement as admitted was improper because the redaction made the statement misleading and eliminated exculpatory information. In *Lighty*, the Fourth Circuit stated that "'redactions are permissible so long as the redaction does not distort the statements' meaning, exclude substantially exculpatory information, or change the tenor of the utterance as a whole.'" *Lighty*, 616 F.3d at 350 (quoting *United States v. Yousef*, 327 F.3d 56, 150 (2d Cir. 2003)). The redacted statement introduced in this case conforms to this standard. The tenor of the statement has not changed in that both versions reveal Ricky Robinson's knowledge of his son's presence at his home, information that is incriminating and relevant to the issues presented at trial. Moreover, the admission is not made misleading by eliminating the implication that Ricky Robinson did not have personal knowledge of the information. As an admission of a party, the statement is not subject to a personal knowledge requirement. *See United States v. Goins*, 11 F.3d 441, 444 (4th Cir. 1993) (noting omission of personal knowledge requirement from Federal Rule of Evidence 801(d)(2)).

-17-

Case 1:12-cr-00035-JPJ-PMS   Document 68   Filed 12/13/12   Page 17 of 20   Pageid#: 526

Finally, the defendants argue that the introduction of this statement was in error because it was not accompanied by a specific limiting instruction to the jury. Because the defendants did not request such an instruction and failed to object to its absence, this issue must be reviewed under the lens of plain error. Central to this question is a determination of whether an error would affect substantial rights by seriously impacting fairness, integrity or the public reputation of judicial proceedings, and whether the proceedings "'resulted in a fair and reliable determination of guilt.'" *United States v. Whitfield*, 695 F.3d 288, 305 (4th Cir. 2012) (quoting *United States v. Cedelle*, 89 F.3d 181, 185 (4th Cir. 1996)).

In this case, the defendants have not demonstrated that the absence of a limiting instruction affected any of their substantial rights. Even without considering the statement in question, the government has presented adequate evidence — through the testimony of law enforcement officers and other admissions from both defendants — that Chad spent time in the Robinson home and the defendants made efforts to conceal him. Moreover, the defendants have not explained how the instruction the court gave the jury about independently considering the evidence against each defendant[5] was inadequate, given all of the facts the government presented in its case.

---

[5] The court gave the following instruction to the jury:

Finally, this question presents similar circumstances to those the Fourth Circuit addressed in *Locklear*, in which the court concluded that the admission of a post-arrest statement from a codefendant in a joint trial constituted, at most, harmless error. In *Locklear*, the government introduced, through the testimony of a law enforcement officer, a statement from Locklear's codefendant that "he knew that on occasion drugs had been kept under the storage shed behind his house and that he was familiar with the Locklear brothers." 24 F.3d at 645. Other incriminating references to Locklear were redacted from the statement before it was admitted into evidence. The Fourth Circuit concluded that the codefendant's statement "hardly function[ed] as a confession" with respect to the codefendant, and even less could "it be said to suggest that M. Locklear engaged in any crimes." *Id.* at 646. At most, the statement suggested Locklear's awareness of the use of the shed as a narcotics storehouse and, in light of the other evidence in the case, this statement was hardly incriminating and any error was harmless. *Id.* Moreover, the court noted that Locklear could not complain of the absence of a limiting

---

> It is your duty to separately consider the evidence against each defendant on each charge and to return a separate verdict for each one of them. For each one, you must decide whether the government has presented proof beyond a reasonable doubt that a particular defendant is guilty of a particular charge. Do not think of the defendants as a group or assume that if there is evidence of guilt as to one defendant or as to one charge, that the other charge or the guilt of the other defendant has been proven beyond a reasonable doubt. It is your duty to give separate and personal consideration to the case of each defendant.

(Instruction No. 9, ECF No. 56, at 13.)

-19-

instruction in his case because he did not request one. *Id.* at 646 n. 2; *accord United States v. Williams,* Nos. 96-4258, 96-4309, 1997 WL 195917, at *1 (4th Cir. Apr. 23, 1997) (unpublished) (finding that the defendant's failure to request an instruction, together with the overwhelming evidence of his guilt, made the absence of an instruction harmless error).

Similarly, Ricky Robinson's admission that his son had returned home "three or four times" merely imports his knowledge of this fact. The admission becomes incriminating when considered in the context of other evidence offered in the case. Given the redaction of any direct incriminating reference to Cynthia Robinson from the statement, as well as the other facts and circumstances presented in the trial of this case, the defendants have not demonstrated a plain error affecting their substantial rights.

V

For the foregoing reasons, it is hereby **ORDERED** that the defendants' Joint Motion for Judgment of Acquittal or New Trial (ECF No. 61) is DENIED.

ENTER: December 13, 2012

/s/ James P. Jones
United States District Judge